IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| LABORIS GUNN, #N0886 | PLAINTIFF |
| VS. | CIVIL ACTION NO. 3:17cv815-FKB |
| MANAGEMENT TRAINING CORP., CENTURION OF MISSISSIPPI, LLC, DR. P. ARNOLD, ET AL. | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

Laboris Gunn is a convicted prisoner incarcerated with the Mississippi Department of Corrections ("MDOC") at the East Mississippi Correctional Facility ("EMCF"), located at Meridian, Mississippi. His claims, brought pursuant to 42 U.S.C. § 1983, arise out of medical treatment he received at EMCF in the fall of 2017. Presently before the Court are the Motions for Summary Judgment filed by Defendants. [37]; [41]. Plaintiff has not responded to the motions.

Gunn asserts that Defendants were deliberately indifferent to his serious medical needs. Defendants are Management Training Corporation ("MTC"), a private entity that managed EMCF under contract with MDOC; Centurion of Mississippi, LLC ("Centurion"), a private entity that contracted with MDOC to provide medical services at EMCF; and Dr. P. Arnold, a doctor and employee of Centurion who provided medical services at EMCF (collectively, the "Centurion Defendants"). In general, Gunn alleges that Defendants showed deliberate indifference to his serious medical needs during the treatment and care of a foot infection he sustained in late 2017. Specifically, Gunn alleges that MTC failed to insure that adequate medical services were rendered to him. [1] at 4. Gunn alleges that Centurion and its employees, including Dr. Arnold, failed to treat his foot ailment properly and delayed treatment. *Id.* at 6-7.

As a part of his complaint, Gunn attached his September 25, 2017, request for Administrative Remedies that sought an "over-haul" of the medical system at EMCF and monetary compensation. *Id.* at 11. The MDOC's Administrative Remedy Program ("ARP") rejected the request on October 4, 2017, as being beyond the power of the ARP to grant. *Id.* at 10. In his testimony at the *Spears* hearing, Gunn admitted that he did not attempt to resubmit his ARP after its rejection, and, instead, filed this action. [41-1] at 16.[1] Gunn signed his complaint on October 6, 2017, and it was filed in this Court on October 13, 2017. [1] at 1, 4.

In the motions, Defendants argue that they are entitled to summary judgment as to all of Plaintiff's claims. Centurion and Dr. Arnold note that Gunn failed to exhaust his administrative remedies before initiating this action. Even so, they argue that they are entitled to dismissal on the merits because the medical records demonstrate that Dr. Arnold was not deliberately indifferent to Plaintiff's serious medical needs, nor did he delay treatment. MTC asserts that Plaintiff has failed to identify any official policy, practice, or custom of MTC that was the moving force behind any alleged deprivation of constitutional rights.

## II.  Relevant Standards

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a

---

[1] Although Defendants asserted failure to exhaust administrative remedies as affirmative defenses in their answers, they did not move for dismissal on that basis. *See* [22] at 5; [23] at 1, 3; [24] at 1, 3. There is also no affidavit accompanying the Centurion Defendants' presentation of records from Gunn's administrative remedies on this claim. *See* [41-2]; *see also Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)(exhaustion is affirmative defense; burden of production is on movant). Accordingly, the Court will base its ruling on the merits of the case.

verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 119 S.Ct. 618 (1998)). Issues of fact are material if "resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis omitted). Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial,*" Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

The standard for analyzing the Plaintiff's denial of medical care claim is well established and has been set forth in a thorough manner, as follows:

> In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care. . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105; *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). In cases such as the one at bar, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he

3

> suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F.Supp.2d 761 (S.D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

*Carrothers v. Kelly*, Civil Action No. 4:05cv80-M-A, 2007 WL 1810666 at *3 (N.D. Miss. June 19, 2007). Furthermore, a plaintiff must show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983. *Davidson v. Texas Dep't of Crim. Justice*, 91 Fed. App'x 963, 965 (5th Cir. 2004)(citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)).

### III. Discussion

#### A. Claims against Dr. Arnold

Plaintiff asserts that Dr. Arnold was deliberately indifferent to his serious medical needs when he failed to treat his foot ailment properly and delayed in providing him treatment. Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F. 3d 339, 346 (5th Cir. 2006). In order to prevail, Gunn must demonstrate that Dr. Arnold knew that Gunn faced a substantial risk of serious harm and "disregarded the substantial health risk about which he knew." *Gobert*, 463 F.3d. at 349. In this case, the undisputed medical records demonstrate that Dr. Arnold did not show deliberate indifference to Gunn when he administered care to him in response to his complaints.

4

Gunn submitted his first Medical Service Request Form complaining of a cut that would not heal between his toes on August 22, 2017. [43] at 85. Dr. Arnold saw Gunn on August 23, 2017, and dispensed to Gunn a triple-antibiotic ointment for him to apply two times per day. *Id.* at 132. At that time, Dr. Arnold advised Gunn to keep the area clean and dry, to wear clean socks daily, and to return to the clinic in fourteen days if the condition did not improve. *Id.* Dr. Arnold ordered an x-ray of Gunn's foot on September 6, 2017, which was normal. *Id.* at 125, 129. Gunn submitted another sick call request on September 6, 2017, and, due to a problem with obtaining guard escorts, he was not seen by a nurse until September 8, 2017. *Id.* at 127-129. After evaluating Gunn, the nurse noted that the skin on the top of his foot was discolored and tender to touch, and she gave an "urgent" referral for Gunn to be examined by a physician. *Id.* at 128.

Dr. Arnold examined Gunn on September 11, 2017, diagnosed Gunn with cellulitis of the right foot, and ordered no weight bearing, wound care, and crutches. *Id.* at 125-126. The doctor submitted immediate orders for oral antibiotics and anti-inflammatories, which nurses began administering that day. *Id.* at 17, 125. He also directed the nurse to obtain a culture of the wound for testing. *Id.* at 125. That same day, a lab technician attempted, but could not obtain a culture, because there was no drainage or open wound. *Id.* at 126. Dr. Arnold scheduled a follow-up visit for September 14, 2017. *Id.* at 125. On September 13, 2017, Gunn's wound was cultured and tests were run, according to Dr. Arnold's orders. *Id.* at 121-122. Dr. Arnold examined Gunn on September 14, 2017, and, at that time, referred Gunn to a local hospital for intravenous antibiotics and wound care. *Id.* at 119.

Gunn was admitted to a local hospital on September 14, 2017, and he underwent surgery for "excisional debridement" of his infected foot on September 15, 2017. *Id.* at 30. Gunn showed

improvement, and he was discharged from the hospital on September 18, 2017, with directions to clean and dress the foot once per day and keep it elevated. *Id.* at 25. He was also given prescriptions for oral antibiotics and pain medication. *Id.* at 24.

Upon his return to the prison, Gunn was admitted to the medical unit. *Id.* at 116. He was given a "lay in" for his cell, and nurses checked on him periodically. *Id.* at 112. He was scheduled to see Dr. Arnold on September 19, 2017, but a nurse rescheduled the appointment to September 22, 2017, due to lack of guard escorts. *Id.* at 112. On September 20, 2017, Gunn was discharged from the medical unit, and Dr. Arnold entered orders for daily wound care and miscellaneous nursing treatment. *Id.* at 110.

Dr. Arnold performed a follow-up examination on September 26, 2017. *Id.* at 107. He commented that Gunn was on daily wound care, but noted that his wound was not responding to oral antibiotics as he expected. *Id.* In response, Dr. Arnold ordered another wound culture, more x-rays, changed Gunn's oral antibiotics, and ordered a follow-up visit in six days. *Id.* Dr. Arnold examined Gunn again on October 3, 2017, and noted improvement with reduction in swelling and minimal drainage from the wound. *Id.* at 102-103. He continued the order for oral antibiotics and wound care, and he ordered ibuprofen for pain. *Id.* Dr. Arnold ordered a follow-up appointment in one week. *Id.* at 102.

On October 4, 2017, the facility transported Gunn for an off-site follow-up appointment with the surgeon who performed the debridement. *Id.* at 11. Gunn reported to the surgeon that he was feeling well. *Id.* The surgeon noted "no signs of surgical site infection" and that the wound was "healing well." *Id.*

Upon Gunn's return from the surgeon on October 4, 2017, Dr. Arnold examined him and continued his existing prescriptions, including those for antibiotics and ibuprofen. *Id.* at 101. Dr. Arnold decided that Gunn should keep his one-month follow-up visit with the surgeon so that the surgeon could re-assess the wound. *Id.* He noted that Gunn was receiving daily wound care. *Id.* Nurses' charts corroborate this observation. *Id.* at 3, 13. On October 10, 2017, Dr. Arnold again examined Gunn. *Id.* at 99. He noted improvement in Gunn's foot and that the nursing staff was "completing daily wound care." *Id.* An October 10, 2017, x-ray report indicated no fracture, dislocation, or soft tissue swelling. *Id.* at 10.

At the omnibus hearing, Gunn testified that after his discharge from the hospital, the facility did not give him medication as prescribed by the surgeon. [41-1] at 10. He testified that he did not receive medications for the first couple weeks after his discharge, but, after that time, the facility consistently administered his medications for about one month. *Id.* at 11. He also asserted that although the nurses did not change the dressing on the wound as directed for the first two weeks after he was discharged from the hospital, they began wrapping it once per day and continued the practice for about one month. *Id.* at 12.

The undisputed medical records provide a contrary picture of the medical staff's administration of medications. Medical staff consistently dispensed ibuprofen for pain multiple times daily before and after his surgery. *See* [43] at 7, 15, 17. Although his surgeon's prescription for acetaminophen with codeine was not started immediately upon his September 18, 2017, discharge from the hospital, medical staff dispensed the medication twice daily for four days beginning September 22, 2017, followed by once daily for five days, ending with every other day on October 4, 2017. *Id.* at 8, 15. His oral antibiotics were consistently administered

7

before and after surgery, pursuant to Dr. Arnold's orders, until they were completed on October 17, 2017. *Id.* at 8, 15, 17. Although the medical charts show that nurses did not begin changing his wound dressing immediately upon his discharge from the hospital, the records demonstrate that nurses changed his dressing thirty times between September 27 and October 31, 2017. *Id.* at 3, 13.

In this case, the undisputed medical records demonstrate that Dr. Arnold administered timely care to Gunn in response to his complaints. On a consistent basis beginning with Gunn's initial complaint on August 22, 2017, Dr. Arnold examined him, ran tests, and medicated him in an effort to treat his condition. When Gunn's foot did not respond to topical and oral antibiotics, Dr. Arnold arranged for surgical care for him at a local hospital. After his hospital discharge, Dr. Arnold examined Gunn on a regular basis, ordered that nurses change his dressing, and ensured that Gunn received follow-up care with the off-site surgeon. Even accepting all of Gunn's allegations as true, there is no genuine issue of material fact. The records show that Gunn received treatment, albeit not in the manner he would have preferred. Moreover, the court is mindful that "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino*, 239 F.3d at 756 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Gunn has failed to respond to the motion for summary judgment and has offered nothing more than his "conclusory allegations" and "unsubstantiated assertions" in support of his claim,

which does not satisfy his burden at this juncture. *See Little*, 37 F.3d 1075. Instead, the undisputed medical records demonstrate that Dr. Arnold was not deliberately indifferent to Gunn's serious medical needs.

Finally, Gunn has failed to come forward with any expert medical opinion establishing causation, *i.e.*, that he was injured as a result of any delay in treatment. *See Campbell*, 83 F. Supp. 2d at 766. Accordingly, Dr. Arnold is entitled to summary judgment on Gunn's claims that he was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

### B. Claims against Centurion

Gunn is apparently attempting to impose liability on Centurion based solely on the actions or inactions of its employees. This attempt cannot succeed, as there is no *respondeat superior* liability under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also White v. Wexford Health Sources, Inc.*, 2013 WL 962365 (S.D. Miss. Feb. 11, 2013)(citing *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505-506 (4th Cir. 1982)(finding that the plaintiff could not recover against a private state-employed company under § 1983 based on *respondeat superior*)). Rather, a plaintiff seeking to recover under § 1983 must allege and prove that the defendant directly participated in the denial of his constitutional rights. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). In this case, Plaintiff has failed to allege direct participation or wrongdoing attributable to Centurion in the denial of his constitutional rights.

Furthermore, Centurion is not vicariously liable because the Court has already determined that there was no constitutional violation. Even assuming there had been a constitutional violation, Centurion would still not be liable because it was not personally

9

involved in the violation. *See Powell*, 678 F.2d at 505-506. Accordingly, Centurion is entitled to summary judgment in its favor.

### C. Claims against MTC

Plaintiff's attempts to hold MTC liable for his claims against Dr. Arnold and Centurion fail as there is no vicarious liability under § 1983. As explained *supra*, there is no *respondeat superior* liability under § 1983. *Monell*, 436 U.S. at 691. Moreover, as MTC points out, and Gunn does not dispute, it did not employ the medical providers and had no authority to diagnose Plaintiff nor determine a course of care. [37-2] at 1.

Instead, Plaintiff may prevail against MTC only if he can demonstrate that a policy, custom, or practice of MTC was the "moving force" behind the alleged constitutional violation. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 694 (1978). However, as discussed *supra*, Plaintiff has failed to show that Dr. Arnold and Centurion were deliberately indifferent to his serious medical needs and has, therefore, failed to show that a constitutional violation occurred. Accordingly, Gunn's claims against MTC must also fail, and MTC is entitled to summary judgment in its favor.

### IV. Conclusion

For the reasons discussed in this Order, the Court hereby grants Defendants' motions for summary judgment at [37] and [41], and this matter is dismissed with prejudice. A separate judgment will be entered. Fed. R. Civ. P. 58.

SO ORDERED, this the 26th day of February, 2020.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE